**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMMA CONVILLE,<br><br>Plaintiff,<br><br>v.<br><br>NORTHUMBERLAND COUNTY,<br>MARGARET HUGHES,<br>THOMAS REISINGER,<br>PRIMECARE MEDICAL, INC.,<br>JENNIFER LOCKLIER, and<br>ALYSSA HENGST,<br><br>Defendants. | No. 4:25-CV-02536<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 13, 2026**

## I. BACKGROUND

On December 29, 2025, Plaintiff Emma Conville filed a five-count complaint against Defendants Northumberland County, Margaret Hughes, Thomas Reisinger, PrimeCare Medical, Inc., Jennifer Locklier, Jamie Olivo, and Alyssa Hengst.[1] Plaintiff later amended her complaint on March 23, 2026, adding two additional counts.[2]

On April 6, 2026, Defendants PrimeCare Medical Inc., Jennifer Locklier, and Alyssa Hengst (the "PrimeCare Defendants") filed a motion to dismiss pursuant to

---

1 Doc. 1. In May 2026, Plaintiff voluntarily dismissed her claims against Defendant Jamie Olivo. *See* Docs. 36, 38.

2 Doc. 23 ¶¶ 30, 33.

Federal Rule of Civil Procedure 12(b)(6).[3] That same day, Defendants Northumberland County, Margaret Hughes, and Thomas Resinger (the "Northumberland Defendants") also filed a motion to dismiss pursuant to Rule 12(b)(6).[4] The motions are now ripe for consolidated disposition; for the reasons that follow, both motions are granted. However, Plaintiff will be provided leave to amend the complaint.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[5] and *Ashcroft v. Iqbal*,[6] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that,

---

[3] Doc. 27.
[4] Doc. 29.
[5] 550 U.S. 544 (2007).
[6] 556 U.S. 662 (2009).
[7] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[8]

A plaintiff in an employment discrimination case does not need to establish a prima facie case in his or her complaint. The Third Circuit clarified this point, stating: "a complaint need not establish a prima facie case in order to survive a motion to dismiss."[9]

### B. Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Defendant PrimeCare Medical, Inc. ("PrimeCare"), is a Pennsylvania corporation that provides medical and technical staff to correctional facilities and advises such facilities regarding legal and professional compliance.[10] Plaintiff Emma Conville is a Licensed Practical Nurse who worked for PrimeCare from March 6, 2019, until August 10, 2023.[11] In that time, Conville worked primarily at the Northumberland County Jail.[12] PrimeCare required Plaintiff to maintain security clearances issued by the Northumberland County Jail and maintained a policy

---

8 *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
9 *Id.* at 788.
10 Doc. 23 ¶¶ 4, 17, 18.
11 *Id.* ¶¶ 1, 4, 35
12 *Id.* ¶ 22.

mandating the termination of any employee who lost a security clearance at any facility.[13]

Plaintiff was romantically involved with an employee of the Northumberland County Jail, Correctional Officer Logan Reynolds.[14] On two occasions in August 2023, Officer Reynolds kissed Plaintiff on the forehead in the jailhouse medical facility without any prompting from Plaintiff.[15] Shortly after, Defendant Margaret Hughes, a Deputy Warden at the Northumberland County Jail, informed Plaintiff's supervisor, Jamie Olivo, that the jail was revoking Plaintiff's security clearance.[16] Moreover, a Prison Rape Elimination Act ("PREA") complaint was also filed against Plaintiff in connection with the kisses.[17]

PrimeCare then terminated Plaintiff for the loss of her security clearance.[18] Additionally, PrimeCare—through their agents, Defendants Alyssa Hengst and Jennifer Locklier—denied Plaintiff's requests to continue her employment at other facilities where she maintained appropriate clearances.[19] According to Plaintiff, PrimeCare previously retained or rehired nurses who had lost their security clearances at certain facilities, allowing them to work at facilities where they

---

[13] *Id.* ¶¶ 23, 98.
[14] *Id.* ¶ 28.
[15] *Id.* ¶¶ 28-29.
[16] *Id.* ¶ 30.
[17] *Id.* ¶ 31.
[18] *Id.* ¶ 35.
[19] *Id.* ¶¶ 36-37.

maintained appropriate clearances.[20] Specifically, Plaintiff's former supervisor, Jamie Olivo, was once terminated and rehired by PrimeCare after losing her security clearance at Pike County Prison.[21]

Plaintiff's former supervisor, Olivo, supported Plaintiff's request and asked PrimeCare to retain Plaintiff to work at other facilities.[22] This was not possible, according to PrimeCare, in light of the pending PREA complaint—of which Plaintiff was then unaware.[23] According to Plaintiff, PrimeCare did not independently investigate the incident that caused Plaintiff to lose her security clearance.[24] Nor did it inform Plaintiff of the cause of her security clearance loss until weeks after her termination.[25]

Although Plaintiff was stripped of her security clearance and terminated, her significant other, Officer Reynolds, was not.[26] Northumberland County placed Officer Reynolds on paid administrative leave pending investigation of the kisses.[27] After an internal hearing, the Northumberland County Jail permitted Officer Reynolds to retain his security clearance and continue his employment at the jail.[28]

---

20 *Id.* ¶ 42.
21 *Id.* ¶ 43.
22 *Id.* ¶¶ 40-41.
23 *Id.* ¶¶ 38, 44.
24 *Id.* ¶ 45.
25 *Id.* ¶ 46.
26 *Id.* ¶ 51.
27 *Id.* ¶¶ 48-49.
28 *Id.* ¶¶ 50-51.

Plaintiff timely filed complaints with the United States Equal Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").[29] On September 30, 2025, Plaintiff received a Notice of Right-to-Sue ("NORS").[30] As noted above, Plaintiff then filed a complaint in this Court against Defendants Northumberland County, Margaret Hughes, Thomas Reisinger, PrimeCare, Jennifer Locklier, Jamie Olivo, and Alyssa Hengst.[31]

## C. Analysis

### 1. Sex Discrimination Claims

Plaintiff's first six counts in the amended complaint allege sex discrimination by Defendants in violation of Title VII of the Civil Rights Act ("Title VII") and Pennsylvania's Human Relations Act ("PHRA").[32] Specifically, Count I alleges that Northumberland County discriminated against her on the basis of her sex in violation Title VII by revoking her security clearance while allowing a male colleague to retain his security clearance for the same conduct.[33] Count II alleges that PrimeCare's policy of terminating employees for loss of a security clearance disparately impacts its predominantly female workforce in violation of Title VII.[34] Count III alleges that Northumberland County's conduct alleged in Count I also

---

[29] *Id.* ¶ 54.
[30] *Id.* ¶ 55.
[31] Doc. 1 (later amended at Doc. 23).
[32] 42 U.S.C. § 2000e and 43 P.S. § 951 *et seq*., respectively.
[33] Doc. 23, pp 61-76.
[34] *Id.* ¶¶ 77-101.

violates analogous provisions in the PHRA.[35] Count IV alleges that Warden Thomas Resinger and Deputy Warden Margaret Hughes aided, abetted, incited, compelled, or coerced Northumberland County into discriminating against Plaintiff on the basis of her sex in violation of the PHRA.[36] Count V alleges that PrimeCare alternatively subjected Plaintiff to disparate treatment on the basis of her sex or aided, abetted, incited, compelled, or coerced Northumberland County into discriminating against Plaintiff in violation of the PHRA.[37] Count VI alleges that PrimeCare employees Jennifer Locklier, and Alyssa Hengst aided, abetted, incited, compelled, or coerced PrimeCare into discriminating against Plaintiff on the basis of her sex in violation of the PHRA.[38]

Employers are prohibited by Title VII from discriminating against their employees on the basis of race, color, sex, or national origin.[39] Subsequent amendments to Title VII specify that an unlawful employment practice is established "when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."[40]

---

[35] *Id.* ¶¶ 102-11.
[36] *Id.* ¶¶ 112-36.
[37] *Id.* ¶¶ 137-51.
[38] *Id.* ¶¶ 152-67. As noted, Plaintiff voluntarily dismissed her claims—including the instant claim—against Defendant Jamie Olivo. *See* Doc. 36.
[39] 42 U.S.C. § 2000e–2.
[40] 42 U.S.C. § 2000e–2(m).

A plaintiff may succeed on a Title VII claim—or the analogous provision of the Pennsylvania Human Relations Act[41]—by demonstrating either a pretextual basis or a mixed motive for a discriminatory employment practice.[42] At this stage, the amended complaint "need not establish a prima facie case in order to survive a motion to dismiss."[43] In fact, Plaintiff need not even decide between pursuing a pretextual or mixed motive theory.[44] Rather, Plaintiff need only supply "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements."[45]

On each of her sex discrimination claims, Plaintiff alleges unlawful disparate treatment. Such illicit disparate treatment is cognizable "when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII."[46] Accordingly, to prevail on a claim of disparate treatment, Plaintiff must offer a valid

---

41 *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.") (citing *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996)).

42 The former theory implicates *McDonnell Douglas Corp.*'s three-part burden shifting inquiry in which a plaintiff must first establish a prima facie case of sex discrimination, after which the burden shifts to the defendant to furnish a legitimate, non-retaliatory reason for its action, and finally the burden returns to the plaintiff to prove that the nondiscriminatory explanation is merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The latter theory implicates the framework set out in *Price Waterhouse v. Hopkins*. 490 U.S. 228 (1989); *see also Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir.2008).

43 *Connelly*, 809 F.3d at 788.

44 *Id.*

45 *Id.* at 789 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008)) (cleaned up).

46 *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990).

"comparator" against which the Court can assess whether similarly-situated persons outside the Plaintiff's protected class were treated more favorably than herself.[47] A comparator employee need not be identical to Plaintiff but must be similarly situated in "all material respects."[48] Relevant factors include whether the employees reported to the same supervisor, were subject to the same standards, and shared like responsibilities.[49] Employees that hold different job titles or work in different departments are not similarly situated.[50] At the motion to dismiss stage, Plaintiff need only "allege facts sufficient to make plausible the existence of such similarly situated parties."[51]

Because Plaintiff fails to make plausible the existence of such similarly situated parties, each of her sex discrimination claims fail. Plaintiff offers only one comparator, Officer Reynolds.[52] She claims that because they were subject to "the same security clearance protocols, as well as the same policies and procedures established by the Northumberland County Jail," she and Officer Reynolds are similarly situated. The Court disagrees. Plaintiff acted as a jail nurse; Officer Reynolds acted as a corrections officer. Plaintiff worked for PrimeCare; Officer

---

47 *See Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024).
48 *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018).
49 *Id.*
50 *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013).
51 *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. 662 (2009)).
52 *See* Doc. 23 ¶¶ 48-53.

Reynolds for the Northumberland County Jail. They operated under different titles and within different departments and therefore are not similarly situated.[53] As presently alleged, the Court has no basis to presume that discovery would yield evidence of other similarly situated persons beyond her protected class who received superior treatment. Having failed to allege facts from which one could reasonably infer that she was treated differently than other employees on the basis of her sex, Plaintiff's discrimination claim is an unsupported conclusion.

Because the Court's inquiries under Title VII and the PHRA are coextensive, each of Plaintiff's sex discrimination claims—Counts I through VI of the amended complaint—must be dismissed.[54]

### 2. Civil Rights Claims

In the final count of the amended complaint, Plaintiff alleges that all Defendants deprived her of her procedural due process rights in violation of 42 U.S.C. § 1983.[55] Her theory is somewhat complex. She claims that the Northumberland Defendants—Northumberland County, Hughes, and Reisinger—filed a baseless PREA complaint against her and this led PrimeCare, with the help of Locklier and Hengst, to "refuse to employ [her] at any other correctional facility."[56] In this way, Plaintiff alleges, Defendants deprived her of her "protected

---

[53] *Mandel*, 706 F.3d at 170.
[54] *Atkinson*, 460 F.3d at 454 n.6.
[55] Doc. 23 ¶¶ 168-92.
[56] Doc. 35, at 15-16.

employment interest under the Fourteenth Amendment."[57] Each Defendant, in Plaintiff's telling, played a role in this deprivation. First, the Northumberland Defendants were responsible for filling the "baseless" PREA complaint.[58] And second, the PrimeCare Defendants—PrimeCare, Locklier, and Hengst—failed to recognize that the PREA complaint was baseless and failed to intervene with the Northumberland Defendants on her behalf.[59] The Defendants moved to dismiss the Section 1983 claims on various grounds, including that they are time barred by the applicable statute of limitations.[60]

The lapse of a statute of limitations is an affirmative defense.[61] Courts may only grant motions to dismiss on statute of limitations grounds "when the statute of limitations defense is apparent on the face of the complaint."[62] The statute of limitations under Section 1983 is borrowed from the personal injury tort law of the state where the cause of action arose.[63] Pennsylvania's personal injury statute of limitations is two years.[64] Federal law governs when a cause of action accrues.[65] Civil rights claims accrue under federal law "when the plaintiff knew or should have

---

[57] *Id.* at 21.
[58] *Id.* at 16.
[59] *Id.* at 16-17.
[60] Doc nos
[61] Fed. R. Civ. P. 8(c).
[62] *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).
[63] *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018).
[64] *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (citing 42 Pa.C.S. § 5524).
[65] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

known of the injury upon which its action is based."[66] This inquiry is objective: the cause of action accrues "at the moment at which each of its component elements has come into being as a matter of objective reality."[67] Generally, a cause of action is considered to have accrued "when the last act needed to complete the tort occurs."[68] "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief."[69]

Plaintiff concedes that she knew "that PrimeCare had discriminated against her by maintaining a policy that disproportionately disfavors female employees at correctional facilities and that Locklier and Hengst had aided and abetted both PrimeCare and the Northumberland Defendants in discriminating against her based on her gender," by August 10, 2023.[70] For that injury, Plaintiff's Section 1983 cause of action expired by August 10, 2025.

Plaintiff seeks to avoid this fate for her claim, however, by alleging that the PrimeCare Defendants "had taken another action that produced a different harm," and that Plaintiffs "did not and could not diligently discover" this action and harm

---

66 *Id.* (quoting *Sameric Corp.*, 142 F.3d at 599).

67 *Leonard v. City of Pittsburgh*, 570 Fed. App'x 241, 244 (3d Cir. 2014) (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011))

68 *English v. City of Wilkes-Barre*, No. 22-2477, 2023 WL 2400698, *2 (3d Cir. Mar. 8, 2023).

69 *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks and citations omitted).

70 Doc. 35, at 15-16.

until Jamie Olivo revealed the same in December 2023.[71] That is, PrimeCare had refused to employ Plaintiff at any other correctional facility due to the PREA complaint, and Plaintiff had no way of knowing of this injury until Olivo revealed it to her. Thus, Plaintiff ostensibly seeks application of the discovery rule.

Pennsylvania's discovery rule "tolls the statute of limitations where an injury or its cause is not reasonably knowable."[72] For a court to toll the statute of limitations, the plaintiff must show that she used "reasonable diligence to investigate [her] claims."[73] A plaintiff demonstrates this reasonable diligence where she "exhibit[s] 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'"[74] Pennsylvania's Supreme Court has acknowledged that the discovery rule is "strict" and "less plaintiff favorable."[75] That Court has also emphasized that Pennsylvania's formulation of the discovery rule is narrower and more burdensome for plaintiffs than that of other jurisdictions.[76] The Third Circuit has observed that the discovery rule is applicable "only to those situations where the

---

71 *Id.* at 16.

72 *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246 (Pa. 2021); *Getchey v. Cnty. of Northumberland*, 120 Fed. App'x 895, 898 (3d Cir. 2005) ("[W]here the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.").

73 *Riad v. Wells Fargo Bank*, No. 22-1757, 2023 WL 8676234, *3 (3d Cir. Mar. 23, 2023).

74 *Id.*

75 *Rice*, 255 A.3d at 247.

76 *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018)

nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury."[77]

Based on the facts alleged, it does not appear plausible that Plaintiff's alleged injury is of such a nature that "no amount of vigilance [would] enable [her] to detect an injury," such that the discovery rule would apply.[78] As the Pennsylvania Supreme Court has noted, although there are "very few facts which diligence cannot discover," there must be "some reason to awaken inquiry and direct diligence in the channel in which it would be successful."[79] Here, Plaintiff was given clear reason to awaken inquiry and direct her diligence toward the basis of her injury. By her own admission, Plaintiff was aware of her termination and its allegedly discriminatory basis by mid-August of 2023.[80] After her termination, she questioned her former supervisor, Jamie Olivo, and more senior supervisors why she could not work at other prisons where she maintained appropriate clearances.[81] Olivo even went to bat for her, similarly inquiring up the chain of command why Plaintiff could not work at another prison.[82] According to Plaintiff, Olivo was told that Plaintiff could not work elsewhere because she was subject to a PREA investigation—information

[77] *Getchey*, 120 Fed. App'x at 899.
[78] *Id.*
[79] *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (quoting *Crouse v. Cyclops Industries*, 745 A.2d 606, 611 (Pa. 2000)) (cleaned up).
[80] Doc. 35, at 15-16.
[81] *Id.* at 6.
[82] *Id.* at 6-7.

Plaintiff claims was withheld from her.[83] It is unclear to the Court, if Supervisor Olivo was advocating for Plaintiff and became aware of the PREA complaint, why Olivo would have withheld this vital information from Plaintiff until over *two years* after the incident in question and after the statute of limitations had already expired. The Court finds it implausible that no amount of diligence on Plaintiff's part would have yielded awareness of this alleged injury. For this reason, the Court finds the discovery rule inapplicable here.

Setting the discovery rule aside and assuming *arguendo* that due diligence would not have yielded to the Plaintiff awareness of the PREA complaint, the Court is unpersuaded that Plaintiff's alleged civil rights violation implicates the PREA complaint in any material way. Plaintiff seeks relief under Section 1983 for the alleged deprivation of her "protected employment interest under the Fourteenth Amendment."[84] But Plaintiff concedes that she was aware that the last act required for the completion of this deprivation occurred on August 10, 2023, when PrimeCare terminated her employment because she lost her security clearance in violation of PrimeCare policy.[85]

---

83 *Id.*

84 Doc. 35, at 21.

85 *See* Doc. 35 at 15-16 (acknowledging that Plaintiff "knew that PrimeCare had discriminated against her by maintaining [the security clearance policy] that disproportionately disfavors female employees at correctional facilities"); Doc. 23 ¶ 98.

Plaintiff submits evidence that, but for the PREA complaint, PrimeCare could have retained her to work at other facilities where she retained appropriate clearances. She notes that PrimeCare had terminated Jamie Olivo for losing her security clearance at Pike County Prison before eventually rehiring her to work at other facilities where she maintained appropriate clearances.[86] In Plaintiff's view, this demonstrates that PrimeCare could have likewise employed her at the other facilities where she maintained appropriate clearances.[87] But these facts tilt against Plaintiff. They validate her express acknowledgement that PrimeCare had a policy of firing employees for losing a security clearance at any facility.[88] Accordingly, Plaintiff's "protected employment interest" would have been deprived—and Plaintiff concedes awareness of this deprivation—when she was fired for losing her security clearance in violation of PrimeCare's policy on August 10, 2023. That she could have been *rehired*, like Olivo, but for the "baseless" PREA complaint of which she was unaware, is immaterial given that her protected employment interest would have already been deprived and her civil rights claim already ripened when she was fired for losing her security clearance.

Accordingly, the Court finds that the alleged Section 1983 injuries accrued at the time of their commission—that is, when Plaintiff was terminated in August of

---

86 *Id.* ¶ 43.

87 *Id.* ¶¶ 40-42.

88 *Id.* ¶ 98 ("PrimeCare maintained a policy that established that if an employee lost her security clearance at ***any facility***, the subject employee would be terminated.") (emphasis in original).

2023. Under Pennsylvania's statute of limitations, those injuries expired in August of 2025—four months before Plaintiff filed her complaint. Therefore, Plaintiff's Section 1983 claims must be dismissed.

## III. CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted. Plaintiff is granted leave to amend her complaint.

"The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[89] But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[90]

As such, Plaintiff will be given fourteen days from today's date to file a second amended complaint. If no amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

89 *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).
90 *Id.* (quoting Fed. R. Civ. P. 15(a)).